UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| OLSON PROPERTY INVESTMENTS, LLC, | Case No. 21-CV-2104 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL ALEXANDER and PHERIZIA DAVIS, | |
| Defendants. | |

    Christopher Kalla and Douglass Turner, HANBERY & TURNER, P.A., for plaintiff.

    Laura Jelinek and Lisa Hollingsworth, SOUTHERN MINNESOTA REGIONAL LEGAL SERVICES, for defendants.

    Plaintiff Olson Property Investments, LLC ("Olson") rents an apartment in Farmington, Minnesota to defendants Michael Alexander and Patrizia Davis[1] ("Tenants"). On September 13, 2021, Olson initiated an eviction action against Tenants in Dakota County District Court. Tenants removed the action to federal court on September 23, 2021. Notice Rem. [ECF No. 1]. The matter is now before the Court on Olson's motion to remand. ECF No. 7.

---

[1] When it initiated the eviction action in state court, Olson misspelled Davis's first name in the complaint. That misspelling is reflected in the caption.

This routine state-court eviction action does not appear to belong in federal court. The parties are not diverse, *see* 28 U.S.C. § 1332, and none of Olson's claims arise under federal law, *see* 28 U.S.C. § 1331. Tenants nevertheless argue that, because they intend to *defend* this eviction action by relying on federal civil-rights laws, removal of this action is authorized by the Supreme Court's decision in *Georgia v. Rachel*, 384 U.S. 780 (1966). For the reasons that follow, the Court disagrees and remands this case to state court.

I. BACKGROUND

The dispute between Olson and Tenants began in the spring of 2020, when Tenants complained to Olson about repairs that were needed in their apartment and about the fact that the child of a neighbor had used racist epithets in speaking to Alexander. Def. Memo. at 2–3 [ECF No. 16]. In response to these concerns, Olson's agent, Stephanie Reis, allegedly told Tenants "if they were unhappy that they should move." *Id.* at 3.

Tensions between Olson and Tenants continued to build, and on May 30, 2020, Olson notified Tenants that it would not renew their lease for another term and instructed them to vacate the apartment when their lease expired on July 31, 2020. Ev. Compl. ¶ 4.1 [ECF No. 1-2]; Def. Memo at 3. Tenants refused to vacate, citing the COVID-19-related eviction moratorium that was then in effect. Def. Memo. at 4.

According to Olson, Tenants have repeatedly harassed their neighbors (causing at least one to move away) and repeatedly harassed two of Olson's agents (Stephanie Reis and Taryl Olson). *See generally* Ev. Compl. To protect against Tenants' harassment, Olson obtained two restraining orders against Alexander. *Id*. ¶ 4.6. Olson also filed an eviction action against Tenants in the Dakota County District Court in August 2020. Def. Memo. at 4.

Due to the pandemic, the Dakota County District Court did not hold a hearing on Olson's eviction complaint until March 2021, at which time the court granted Tenants' motion to dismiss (apparently agreeing that their eviction was barred by the eviction moratorium). Def. Memo. at 5. Shortly thereafter, Tenants filed a lawsuit against Olson, alleging violations of federal and state civil-rights statutes, and Olson removed that lawsuit to this Court on March 31, 2021. *Id.* at 6; *see also Alexander v. Olson Prop. Inves., LLC*, 21-CV-0902 (PJS/HB) (D. Minn. filed Mar. 31, 2021). Finally, Olson initiated the present (second) eviction action against Tenants in Dakota County District Court on September 13, 2021, and Tenants removed the action to this Court on September 23, 2021. *See* Notice Rem. Olson has now moved to remand the eviction action to state court.

II.  ANALYSIS

*A.  Legal Standard*

"[F]ederal courts are courts of limited, not general, jurisdiction."  *Alumax Mill Prods., Inc. v. Cong. Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990).  "[W]hen a federal court lacks subject-matter jurisdiction over a removed case, it must remand it to state court . . . ."  *Dalton v. JJSC Props., LLC*, 967 F.3d 909, 914 (8th Cir. 2020) (quotation omitted); *see also Water's Edge Habitat, Inc. v. Pulipati*, 837 F. Supp. 501, 505 (E.D.N.Y. 1993) ("It is axiomatic that a defendant has no inherent right to a federal forum to adjudicate a federal right absent exclusive federal jurisdiction.").

As noted, this Court does not have diversity jurisdiction (as all of the parties are citizens of Minnesota) or federal-question jurisdiction (as none of Olson's claims rest on federal law).  *See* 28 U.S.C. §§ 1331, 1332.  But Tenants nevertheless argue that this Court has jurisdiction over this eviction action under the civil-rights removal statute, 28 U.S.C. § 1443.  According to the "*Rachel* test"—named after the Supreme Court's decision in *Georgia v. Rachel*—a case is removable under § 1443(1) if two things are true:  "First, it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (quoting *Rachel*, 384 U.S. at 792).  Second,

the removal petitioner must show that he or she will be unable to enforce his or her federal rights if required to defend them in state court.

The second prong of the *Rachel* test usually "requires that the 'denial be manifest in a formal expression of state law,' such as a state legislative or constitutional provision." *Id.* (quoting *Rachel*, 384 U.S. at 803). The second prong may also be met "in the rare situations where it can be clearly predicted . . . that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *Id.* at 220 (quoting *City of Greenwood v. Peacock*, 384 U.S. 808, 828 (1966)); *see also Pulipati*, 837 F. Supp. at 506 ("[T]he defendant must demonstrate that the very act of being forced to defend the state suit manifests a violation of the federal right in order to state a claim for removal under section 1443.").

## B. Application

Tenants contend—and Olson does not dispute—that they satisfy the first prong of the *Rachel* test because the rights that they intend to assert in defense of the eviction action arise under the federal Fair Housing Act, which provides for the protection of "civil rights stated in terms of racial equality." *Rachel*, 384 U.S. at 792. The Court will assume that Tenants are correct. *See Pulipati*, 837 F. Supp. at 505 (recognizing existence of "cases that have found a state proceeding impinging upon rights guaranteed by the FHA may implicate an 'equal civil right'").

Tenants offer two explanations for how they meet the second prong of the *Rachel* test. First, Tenants argue that they "cannot enforce the[ir] rights asserted under the Fair Housing Act" if forced to litigate in state court. Def. Memo. at 11. Tenants concede that they can assert their rights under the Fair Housing Act in defending against the eviction action—and that the state court will rule on their defenses—but Tenants complain that Minnesota does not permit formal discovery or the assertion of counterclaims in eviction proceedings.[2] As far as the Court can tell, however, no court has ever held that the second prong of the *Rachel* test is met simply because a state court does not provide all of the procedures available in federal court. Specifically, the Court is unaware of any court that has found that a defendant is not able to enforce his or her federal rights in state court because of the absence of or limits on discovery or because the defendant cannot file counterclaims. *Cf. Wells Fargo Bank Nat'l Ass'n v. Vann*, No. 13-CV-01148-YGR, 2013 WL 1856711, at *3 (N.D. Cal. May 2, 2013) (concluding removal of unlawful detainer complaint was improper under § 1443 even though defendant alleged complaint process lacked "unlimited jurisdiction cross complaint and

---

[2]Tenants' description of Minnesota eviction actions may not be entirely accurate. *See Deutsche Bank Nat. Tr. Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. Ct. App. 2014) ("Defendants may . . . raise defenses and counterclaims that fit within the limited scope of an eviction proceeding. They may also request a stay if another action related to the property is pending . . . ."); *see also Amresco Res. Mortg. Corp. v. Stange*, 631 N.W.2d 444, 445–46 (Minn. Ct. App. 2001) (rejecting an attack on the state's eviction procedure by explaining that defendants in eviction cases have "an equally valuable, alternate process available" for securing their rights, i.e. the filing of a separate lawsuit).

-6-

discovery"). To the contrary, numerous federal courts—including the United States Supreme Court, *see, e.g.*, *Peacock*, 384 U.S. 808—have found state-court criminal actions *not* to be removable under § 1443, and they have done so even though state criminal actions have little formal discovery (compared to federal civil actions) and even though defendants in criminal actions cannot file counterclaims.

Second, Tenants argue that Olson's very act of filing this eviction action violates Tenants' civil rights. According to Tenants, "[t]he only reasonable inference is that this action was filed in whole or in part to harass or intimidate Mr. Alexander and Ms. Davis in the enforcement of their civil rights. . . . [T]hey were engaged in activity protected by the Fair Housing Act of 1968 and . . . the state court action was brought against them for having exercised their civil rights." Def. Memo at 10.

Even if it were true that the *only* reason Olson brought this eviction action was to "harass or intimidate" Tenants, that would not be enough to satisfy *Rachel*'s second prong. If it were, any tenant faced with an eviction action could simply claim that the action was filed for a discriminatory or retaliatory purpose, remove the action to federal court, and, through that removal, delay his eviction by months. The federal courts would be buried under a mountain of routine eviction actions. Fortunately, the law is not as Tenants would have it. For a removal petitioner to meet the second prong of the *Rachel* test, she must establish more than that the state-court action was commenced

against her for discriminatory or retaliatory reasons; she must establish that she has the right under a particular federal statute to not even *litigate* the question of whether the state-court action was filed for discriminatory or retaliatory reasons. As the Supreme Court has emphasized, it is extraordinarily rare for federal law to give a defendant immunity from even having to *appear* in a state court to defend an action. *See Peacock*, 384 U.S. at 828.

The Supreme Court's opinions in *Rachel* and *Peacock* —issued the same day—illustrate the narrowness of the second prong of the *Rachel* test. Both *Rachel* and *Peacock* involved state criminal proceedings that had been removed to federal court by defendants. In *Rachel*, the defendants were being prosecuted for violating a state trespass law by participating in a "sit-in" to protest racial segregation in Georgia. In *Peacock*, the defendants were being prosecuted for various state crimes (including obstruction of a public street, contributing to the delinquency of a minor, driving an automobile without a license, and biting a police officer) after participating in civil-rights demonstrations in Mississippi. In both *Rachel* and *Peacock*, the defendants argued—as Tenants argue here—that the legal actions were commenced against them because of their race or in retaliation for their exercise of civil rights protected by federal law.

The Supreme Court held that the *Rachel* defendants had properly removed the cases under § 1443, but that the *Peacock* defendants had not.  According to the Court, the difference between the *Rachel* defendants and the *Peacock* defendants was that only the *Rachel* defendants were protected by a "preemptive federal civil rights law"—i.e., a federal law that conferred an "absolute right" on the defendants to engage in the conduct targeted by the state proceeding and that conferred absolute immunity from being *prosecuted* for such conduct.  *Peacock*, 384 U.S. at 826–27.  As the Court explained:

> [Removal was proper in *Rachel* because the Civil Rights Act of 1964] specifically and uniquely guarantees that the conduct alleged in the removal petition in *Rachel* may not be the subject of trespass prosecutions.  [Accordingly,] the defendants inevitably are denied or cannot enforce in the courts of the State [that federal right] by merely being brought before a state court to defend such a prosecution.

*Id.* at 825 (cleaned up).  By contrast, the *Peacock* defendants based their removal petition on their contentions that they had committed no crimes, that they were being prosecuted for discriminatory or retaliatory reasons, and that they would "be unable to obtain a fair trial in the state court."  *Id.* at 826.  This, said the Court, is not sufficient:

> It is not enough to support removal under s[ection] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in

> a particular state court. *The motives of the officers bringing the charges may be corrupt*, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial.

*Id.* at 827–28 (quoting *Rachel*, 384 U.S. at 803) (emphasis added).

The Fair Housing Act does not extend to Tenants the "unique[]" absolute immunity extended to the defendants in *Rachel*. Whereas the Civil Rights Act of 1964 specifically guaranteed that the *Rachel* defendants did not even have to appear in state court to *defend* against a trespass prosecution arising out of a sit-in, the Fair Housing Act does not guarantee that Tenants do not even have to appear in state court to defend against an eviction action. And that is true even if "[t]he motives of [Olson] bringing the [action] may be corrupt." *Id.* at 827.[3]

---

[3]The cases cited in Tenants' brief are not persuasive. In *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991), the parties did not dispute that the claims fell within the holding of *Rachel* or that removal was proper, so the court did not carefully analyze the issue. In *Northside Realty Associates v. Chapman*, 411 F. Supp. 1195 (N.D. Ga. 1976), the court discussed § 1443 at some length, but not in the context of a routine state-court eviction action. Moreover, the Court does not find the reasoning of *Northside Realty* persuasive for the reasons explained by the Second Circuit in *Emigrant Savings Bank v. Elan Management Corp.*, 668 F.2d 671, 674–75, 675 n.4 (2d Cir. 1982) (disagreeing with the Fifth Circuit's opinion in *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968)—on which *Northside Realty* relied—and concluding that "the scope of [*Rachel*'s second

(continued...)

Like the defendants in *Peacock*, Tenants have the right to defend the state action on the ground that it was brought in violation of federal civil-rights laws. And as was true in *Peacock*, the state court will rule on those defenses, and there is no reason to believe that the state court will act unfairly. Removal of Olson's eviction action against Tenants was therefore not authorized by § 1443, and the action must be remanded to state court. *Cf. Pulipati*, 837 F. Supp. at 506 ("Under New York law, the defendant in an eviction proceeding is entitled to present all legal and equitable defenses he or she has available under State or federal law. Accordingly, respondents have an adequate State remedy to protect their federal rights and removal to this Court under 28 U.S.C. § 1443(1) was improper." (citations omitted)); *U.S. Bank Nat'l Ass'n v. Jefferson*, 314 F. Supp. 3d 768, 782–83 (S.D. Tex. 2018) ("[E]ven assuming that plaintiffs brought these claims against defendants solely because of their race, that is still not enough to support removal. . . . [D]efendants have no federally conferred immunity from having to defend the claims that plaintiff has brought against them in state court, and the civil rights statutes upon which they rely do not confer upon them the right to engage in the

---

[3](...continued)
prong] [i]s limited to statutes containing explicit anti-prosecution language . . . [the anti-intimidation provision of the FHA] furnishes no basis for removal"). *See also Henlopen Landing Homeowners Ass'n, Inc. v. Vester*, Civ. Action No. 12-308-RGA-CJB, 2013 WL 1704889, at *12–14 (D. Del. Apr. 19, 2013), *report and recommendation adopted*, No. CV 12-308-RGA, 2013 WL 10974212 (D. Del. May 14, 2013) (explaining why *Sofarelli* and *Northside Realty* are unpersuasive).

specific conduct of which plaintiffs accuse them . . . ."); *Westridge Place Apartments LP v. Delph*, 744 F. App'x 333 (8th Cir. 2018) (concluding unlawful detainer action was improperly removed under 28 U.S.C. § 1443).[4]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to remand [ECF No. 7] is GRANTED.

2. This action is remanded to the Dakota County District Court, State of Minnesota for further proceedings in Case No. 19AV-CV-21-1607.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 20, 2022                          s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge

---

[4] Although the question is very close, the Court finds that Tenants had "an objectively reasonable basis for seeking removal" and thus declines to award attorney's fees to Olson pursuant to 28 U.S.C. § 1447(c). *Convent Corp. v. City of N. Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).